**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>CISCO SYSTEMS, INC.,<br><br>                    Defendant. | Civil Action No. 2:20-cv-00211<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFF'S CAUSE
OF ACTION FOR INFRINGEMENT OF US 8,913,898 AND US 10,205,516**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................1

II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT
(L.R. CV-7(a)(1)) ................................................................................................1

III. FACTUAL BACKGROUND ................................................................................1

    A.  Procedural History of *Oyster I*, *Oyster II* and the Present Case
(*Oyster III*) ............................................................................................... 1

    B.  Overlap in Asserted Patents Between the Cases.................................... 2

    C.  Overlap in Accused Products................................................................ 4

IV. LEGAL STANDARDS ..........................................................................................6

    A.  Claim Preclusion.................................................................................. 6

    B.  Kessler Doctrine................................................................................... 8

V.  ARGUMENT ..........................................................................................................8

    A.  Oyster's Allegations Under the '898 Patent Are Barred ...................... 8

        1.  Claim Preclusion (Res Judicata) Bars the '898 Patent Allegations........... 8

            a.  '898 Accused Products Are Essentially the Same as *Oyster
I/II* ......................................................................................................8

            b.  Overlap in time, space, origin, or motivation ...............................10

        2.  The Kessler Doctrine Bars the '898 Patent Allegations .......................... 11

    B.  Oyster's Allegations Under the '516 Patent Are Barred ...................... 11

        1.  Claim Preclusion (Res Judicata) Bars the '516 Patent Allegations ......... 11

            a.  '516 Accused Products Either Identical or Essentially the
Same...................................................................................................11

            b.  '516 Patent Is Essentially the Same As the Prior Patents.............12

            c.  Overlap in time, space, origin, or motivation ...............................14

        2.  The Kessler Doctrine Bars Oyster's Allegations Under the '516 Patent.. 15

## TABLE OF AUTHORITIES

### Cases

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008) .................................................7, 9

*Adaptix, Inc. v. Amazon.com, Inc.,* 5:14-cv-01379, 2015 U.S. Dist. LEXIS 111933
    (N.D. Cal. 8/21/15) ........................................................................................ 6, 9-12, 15

*Arizona v. California*, 530 U.S. 392 (2000) .................................................................................8

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) ......................12

*Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045 (Fed. Cir. 2014) ............................. 6, 8, 10-11, 15

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011)....................................................................1

*Houston Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443 (5th Cir. 2016) ....................7, 10

*Kessler v. Eldred*, 206 U.S. 285 (1907) .......................................................................1, 8, 11, 15

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616 (Fed. Cir. 1995) ............................7

*Maz Encryp. Techs. v. Blackberry*, 347 F. Supp. 3d 283 (N.D. Tex. 2018) ............... 1, 6, 9-13, 15

*Nystrom v. Trex Co.*, 580 F.3d 1281 (Fed. Cir. 2009) ...................................................................9

*Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398 (5th Cir. 2009) ..................................................8

*Oyster I/II. Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883
    (5th Cir. 2016)........................................................................................2-6, 8-12, 15

*In re PersonalWeb Techs. LLC*, 961 F.3d 1365 (Fed. Cir. 2020) .................................. 7-9, 11, 15

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021
    (E.D. Tex. 2019) .........................................................................................................14

*Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014)............................... 6-7, 12

*SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018).....................................6-7, 12-15

*SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317 (Fed. Cir. 2015) .......................................8

*Xlear, Inc. v. STS Health, LLC*, No. 2:14-CV-00806-DN, 2015 WL 8967574
    (D. Utah Dec. 15, 2015)................................................................................................14

*Yeti Coolers v. Wal-Mart Stores, Inc.*, 1:17-cv-1145-RP,
    2018 U.S. Dist. LEXIS 227298 (W.D. Tex. 8/28/18)............................................................10

**<u>Other Authorities</u>**

Rule 12(b)(6)................................................................................................................6

## I.     INTRODUCTION

Defendant Cisco Systems, Inc. ("Cisco") seeks to dismiss the claims of Plaintiff Oyster Optics, LLC ("Oyster") with respect to two of three patents asserted in this case based on res judicata (or claim preclusion) and the *Kessler* doctrine:  U.S. 8,913,898 (the '898 Patent") and U.S. 10,205,516 ("the '516 Patent").  These are issues of law, appropriate for resolution at the motion to dismiss stage.  Oyster previously litigated an expansive case against Cisco in this Court, which it recently dismissed with prejudice.  Immediately thereafter, Oyster filed this case.  The law precludes Oyster from doing what it seeks to do here:  have a second bite at the apple by asserting claims that may appear distinct in name but are "essentially the same" in substance as the prior action.  Resolving this issue now will avoid the harassment and waste of resources that claim preclusion and the *Kessler* doctrine are intended to prevent.

## II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT (L.R. CV-7(a)(1))

1.)  Whether Oyster's infringement allegations for the '898 Patent are barred.

2.)  Whether Oyster's infringement allegations for the '516 Patent are barred.

## III.    FACTUAL BACKGROUND

### A.     Procedural History of *Oyster I*, *Oyster II* and the Present Case (*Oyster III*)

*Oyster I* (the 2016 Case).  Oyster first sued Cisco in Case 2:16-cv-01301 (*Oyster I*), asserting 7 patents directed to optical fiber communications.  *Oyster I*, Dkt. 1 ¶ 9.[1] Of those 7 patents, 3 are pertinent to this motion: U.S. 7,620,327 ("'327 Patent"); U.S. 8,374,511 ("'511 Patent"), and the '898 Patent (collectively, the "Prior Patents"). *Oyster I*, Dkt. 1 Ex. E–G.  During *Oyster I*, Oyster withdrew all but the '327 Patent.  *Oyster I*, Dkt. 1, 550, 790; Ex. A.  In 2018, the

---

[1] It is proper to take judicial notice of prior case records.  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Maz Encryp. Techs. v. Blackberry*, 347 F. Supp. 3d 283, 293 (N.D. Tex. 2018). Apart from Dkt. 1, all other docket cites to *Oyster I* are to the consolidated case (2:16-cv-01302).

Court granted Cisco summary judgment on a release defense based on Oyster's settlement with a Cisco supplier (Fujitsu Network Communications, Inc.). *Id.* at Dkt. 864. The Federal Circuit affirmed. *Id.* at Dkt. 895. On June 18, 2020, pursuant to the parties' stipulation, the Court ordered "all claims, counterclaims, and causes of action asserted by and between Oyster and Cisco in this action are DISMISSED WITH PREJUDICE." *Oyster I,* Dkt. 57.

2018 Severed Case (*Oyster II*). After the Court granted summary judgment in 2018, Oyster severed the products that did <u>not</u> contain a Fujitsu component (and thus not subject to summary judgment) into a separate action:  Case 2:18-cv-00479 ("*Oyster II*").  The Court stayed *Oyster II* pending the appeal in *Oyster I.  Oyster II,* Dkt. 1.  When the Federal Circuit affirmed *Oyster I,* the Court set *Oyster II* for trial.  Oyster stipulated to dismissal and, on June 16, 2020, the Court ordered that "all claims, counterclaims, and causes of action asserted by and between Oyster and Cisco in this action are DISMISSED WITH PREJUDICE."  *Id.* at Dkt. 39.

2020 Case (*Oyster III*).  On June 18, 2020, Oyster filed the complaint initiating this action.

**B.      Overlap in Asserted Patents Between the Cases**

The '898 Patent and the other Prior Patents.  The presently asserted '898 Patent is also one of the Prior Patents asserted in *Oyster I/II.  See Oyster III*, Dkt. 1, Count II and Ex. B; *Oyster I/II,* Dkt. 1, ¶ 9.  The Prior Patents are continuations of each other:  the '898 Patent is a continuation of the '511 Patent, which is a continuation of the '327 Patent.

The '516 Patent.  The presently asserted '516 Patent is also a continuation of the Prior Patents, shares the same specification, and (as discussed below) has a claim scope that is essentially the same. *Oyster III,* Dkt. 1, Count III and Ex. C; *Oyster I/II,* Dkt. 1, ¶ 9.  Additionally, during the prosecution of the '516 Patent, Oyster faced a double-patenting rejection over one of the Prior Patents (the '327 Patent).  In response, Oyster filed a terminal disclaimer.  Ex. B.

The Common Specification. The common specification was originally filed 18 years ago

2

as the application for the '327 Patent. '516 Patent, Item 63, 1:5-16; '898 Patent, Item 63, 1:7-13.

Oyster filed the application for the '516 Patent 15 years later, in August 2017.

According to Oyster's statements in *Oyster I/II*, the invention of the Prior Patents (called

"Group 2" patents in *Oyster I/II*) focused on monitoring optical power at a receiver:

> [T]he patents teach novel combinations with receiver-side energy level detectors. As shown in the below example, detectors can tap a portion of the optical signal, convert the optical energy into an electrical signal, and then average those electrical signals. *See, e.g., id.* at Fig. 3. Using this novel approach, the systems can monitor the optical power of network transmissions—and do so continuously. The system can then trigger alarms if the power falls below various acceptable energy threshold values. *See, e.g.,* '327 patent at Fig. 2 at 31, 33, 233.

*Oyster I,* Opening Claim Construction Brief, Dkt. 157, at 6 (referring to the following figures)



'898 Patent, Fig. 2 (partially reproduced).



'898 Patent, Fig. 3 (annotated).  The specification explains that Figure 3 "shows the energy level

detector 33 of the present invention in more detail."  *Id.* at 5:25-26.  "A photodetector or other

optical to electrical conversion device 153 measures the optical signal coupled to its input by

coupler/splitter 31.  The output of photodetector 153 is an electrical voltage whose level correlates

to the optical power at the input to the photodetector 153 . . . ."  *Id.* at 5:31-35.  "The electrical

signal . . . is compared to reference voltages [Threshold 1, Threshold 2] by one or more comparators [156, 157]." *Id.* at 5:60-62.  The specification just refers to a "photodetector" and "comparator" without description of their underlying technology; they are conventional components.  "Thus, the circuit of FIG. 3 may be configured to monitor in real time the optical power at the receiver 11 for excess light or too little light to indicate a potential optical tap, tamper or other degradation of the optical signal." *Id.* at 6:17-20.  The entire specification spans just 6 columns and three figures.  Nonetheless, the four patents contain over 100 claims——80 in the Prior Patents—covering slight variations in describing the energy level detector in Figure 3.

Attached as Exhibit C is a side-by-side claim chart comparing the claim scope of the '516 Patent to the claims of the Prior Patents.  The chart is based on claim 1 of the '516 Patent because that is the claim that Oyster used to plead its cause of action.  *Oyster III,* Dkt. 1, ¶¶ 54–60 (tracking claim 1).  As it shows, and as discussed in detail below, the claim scope is essentially the same, and nothing about the scope of the '516 Patent claims is so materially different as would give rise to a second cause of action.  Instead, the claims of the '516 Patent fall within the scope of the claims in *Oyster I/II* and on their face do not claim any patentable distinction over features taught by the claims in the prior patents.  As to the '898 Patent, there is no difference in claim scope to consider, as that patent is a Prior Patent from *Oyster I/II.*

### C.  Overlap in Accused Products

Some accused products are identical to those previously accused in *Oyster I/II,* and the other accused products are essentially the same.  In *Oyster I/II,* Oyster's allegations applied to optical transceivers located in either a "cards" (e.g. the cards used in the "ONS 15454" platform) or in a pluggable module (e.g. modules complying with the "OIF CFP2 ACO Standard").  *Oyster I/II* Dkt. 1 ¶ 102.  Exhibit D provides a side-by-side comparison of the allegations between the cases.  The Complaint in *Oyster III* also accuses optical transceivers in either a card or a pluggable

4

module.  *E.g. Oyster III,* Dkt. 1 ¶¶ 34, 35.  Certain products are identical, namely the CFP2-ACO modules.  Ex. D.  Any differences are immaterial to the asserted claims.

In *Oyster I/II*, Oyster accused the same functionality accused now:  standard coherent optical transceiver technology with input power monitoring, as specified by the Optical Internetworking Forum ("OIF").  *Oyster I*, Dkt. 1, ¶¶ 70, 89, 91, 102–107. For example, Oyster's complaint in *Oyster I/II* accused optical transceivers using standard Dual Polarization, Quadrature Phase Shift Key (DP-QPSK) modulation formats. *Oyster I*, Dkt. 1 ¶ 102 ("The 100G Accused Instrumentalities . . . are designed in accordance with Optical Internetworking Forum ("OIF") specifications.").  Oyster accused cards and pluggable modules having industry-standard, coherent QPSK transmitters and receivers:




*Oyster I,* Dkt. 1, ¶¶ 89, 103, 71 (transmitters); *id.* at ¶¶ 91, 105, 76 (receivers). Oyster's expert confirmed this in *Oyster I/II.*  Ex. A, ¶¶ 49–50, 75.  Now, Oyster again accuses cards and pluggable modules having industry-standard, coherent transmitters and receivers:




*Oyster III,* Dkt. 1 ¶¶ 36, 40, 56.  Oyster again points to OIF standards in support.  *Id.* at ¶¶ 46, 59.

For the Energy Level Detector limitations, Oyster again accuses "loss of signal" threshold alarms.  *Id.* at 45–46, 58–59; Ex. D.  Oyster's prior complaint accused products that monitored optical input power against thresholds.  *Oyster I,* Dkt. 1, ¶¶ 107, 93, 78.  Oyster specifically accused products having a "loss of signal" alarm.  *See* Oyster's Opposition to Summary Judgment, *Oyster I/II* Dkt. 353, 3 (accusing Cisco product because it generates "loss of signal indicators."); *id.* at Ex. 2 ¶ 198 ("A "loss of signal" detector is a type of energy level detector that detects when the phase modulated signal falls below a threshold."); *id.* at ¶ 206 (Oyster's expert accusing "The CTP2 Product Requirement Specification discloses various alarm thresholds, including 'Rx Loss of signal' and 'Rx Loss of optical power.'").

## IV.    LEGAL STANDARDS

Rule 12(b)(6) requires dismissal if a lawsuit fails to state a claim upon which relief may be granted.  Whether a cause of action is barred by claim preclusion is a question of law, *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1165 (Fed. Cir. 2018), appropriately adjudicated at the motion to dismiss stage.  *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) (affirming dismissal for claim preclusion); *Maz Encryption*, 347 F. Supp. 3d at 285; *Adaptix, Inc. v. Amazon.com, Inc.,* 5:14-cv-01379, 2015 U.S. Dist. LEXIS 111933, at *10, 29 (N.D. Cal. 8/21/15).

### A.    Claim Preclusion

"Claim preclusion bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Duffie*, 600 F.3d at 372; *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1053 (Fed. Cir. 2014).  In a patent case, courts "look to the law of the regional circuit in which the district court sits for guidance regarding the principles of claim preclusion; however, whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases, and we therefore apply [Federal Circuit] law to that issue." *Senju*, 746 F.3d at 1348.  Under Fifth Circuit law, "[t]he test for claim preclusion has

6

four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Duffie*, 600 F.3d at 372.

Disputes often center on the fourth element, which asks whether the same cause of action is involved in both suits. *Id*. To determine whether causes of action are the same, the Fifth and Federal Circuits apply the "transactional test" of the Restatement (Second) of Judgments. *Houston Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016); *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008); *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619-20 (Fed. Cir. 1995) ("[A] party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together."). "The transactional test focuses on whether the two cases 'are based on the same nucleus of operative facts." *Houston Prof'l Towing*, 812 F.3d at 447. "It is the 'nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted' that defines the claim." *Id*. Moreover, "'what factual grouping constitutes a 'transaction,' . . . is to be determined pragmatically giving weight to such consideration as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id*.

"Following the approach taken in the Restatement, we define a cause of action by the transactional facts from which it arises, and we consider the extent of the factual overlap between the two [causes of action]." *In re PersonalWeb*, 961 F.3d 1365, 1374-75 (Fed. Cir. 2020). If there is a substantial overlap between the transactions of two causes of action, then the later cause of action is normally barred by claim preclusion. *SimpleAir*, 884 F.3d at 1165.

### B.      Kessler Doctrine

Under the *Kessler* doctrine (*Kessler v. Eldred*, 206 U.S. 285 (1907)), a judgment of non-infringement bars a plaintiff from accusing post-judgment activity of infringement, filling a temporal gap left by traditional claim preclusion.  *SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1328 (Fed. Cir. 2015); *Brain Life*, 746 F.3d at 1058.  Under the doctrine, a non-infringer may "continue the same activity in which it engaged prior to the infringement allegations once it ha[s] defeated those contentions in the first suit." *Id.* at 1056. It prevents "repeated harassment for continuing its business as usual post-final judgment."  *Id*.  A voluntary dismissal with prejudice is a judgment of non-infringement for purposes of the doctrine. *In re PersonalWeb*, 961 F.3d at 1379.

## V.      ARGUMENT

### A.      Oyster's Allegations Under the '898 Patent Are Barred

#### 1.      Claim Preclusion (Res Judicata) Bars the '898 Patent Allegations

All elements of the Fifth Circuit's claim preclusion test are satisfied. The first three elements are straightforward:  **First,** the identical parties are involved.  **Second,** this Court rendered the prior judgments, and is unquestionably a court of competent jurisdiction.   **Third,** there has been a final judgment on the merits.  Both *Oyster I* and *Oyster II* ended with stipulated dismissals with prejudice.  *Oyster I,* Dkt. 57; *Oyster II,* Dkt. 39.  A dismissal with prejudice is a final judgment on the merits for claim preclusion purposes. *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009); *Brain Life*, 746 F.3d 1053.  This is because a consent judgment (*e.g.*, agreed dismissal with prejudice) ordinarily is intended to preclude any further litigation on the cause of action. *Arizona v. California*, 530 U.S. 392, 414 (2000).  As discussed below, the **fourth** element of the claim preclusion test is satisfied because the same cause of action is involved.

##### a.      '898 Accused Products Are Essentially the Same as *Oyster I/II*

In applying res judicata to patent cases, the Court considers "the overlap of the product or

process accused in the instant action with the product or process accused in the prior action." *In re PersonalWeb*, 961 F.3d at 1374-75. "[A]n overlap in accused devices is also a critical transactional fact to consider when determining whether a new cause of action is the same as an old cause of action." *Maz Encryption*, 347 F. Supp. 3d at 290. Claim preclusion applies if accused products are "essentially the same." *In re PersonalWeb*, 961 F.3d at 1374-75. "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent." *Id.* (citing *Acumed*, 525 F.3d at 1324 and *Foster*, 947 F.2d at 480); *Nystrom v. Trex Co.*, 580 F.3d 1281, 1286 (Fed. Cir. 2009) (affirming res judicata where different wood grain not materially different to "wood cut from a log" limitation).

Courts have granted motions to dismiss under similar circumstances as here. For example, in a series of related cases, a plaintiff newly accused a set of tablet and handset products that "were not even on the market during the pendency" of the prior litigation, but the court held claim preclusion applied because they were "essentially the same" in that the products were directed to the same, industry standard cellular technology. *Adaptix, Inc. v. Amazon.com, Inc.,* 5:14-cv-01379, 2015 U.S. Dist. LEXIS 111933, at *10, 29 (N.D. Cal. Aug. 21, 2015) ("Now, as then, the accused functionality is based on the 3GPP LTE industry standard.")

As described above and in Exhibit D, all of the '898 Patent Accused Products are "essentially the same" as what was accused of infringing that patent in *Oyster I/II* because any differences are merely colorable or unrelated to the limitations in the patent claims. In both litigations (*Oyster I/II* and *III*), the accused products are coherent optical transceivers disposed in a line card or pluggable module. Ex. D. The transmitters (coherent QPSK modulators), receivers (coherent receivers) and optical power monitoring (Loss of Signal and/or monitoring photodiode) between the cases are all essentially the same, without any differences that would be material to

the claim limitations.   Then, as now, this is technology specified by the Optical Interworking

Forum (OIF).   *Oyster I,* Dkt. 1 ¶ 70–71.   The differences in the products go to capacity and form

(e.g. is the optical transceiver fully or partially integrated with the line card or is it in a module

pluggable into a line card). Oyster cannot assert that the new products are substantially different

from those accused previously.   *See Adaptix,* 2015 U.S. Dist. LEXIS 111933, at *14.

### b.      Overlap in time, space, origin, or motivation

The infringement allegations under the '898 Patent share a common nucleus of fact, as

shown by the number of facts that are related in time, space, origin, and motive.   *Houston Prof'l*

*Towing*, 812 F.3d at 447.   The '898 Patent is a Prior Patent, by definition directed to the same

invention, having the same inventor, originating from the same start-up company, and asserted by

the same non-practicing entity in an effort to monetize a purported invention conceived over 18

years ago. Likewise, the Accused Devices are essentially the same.

As to timing, the date of the prior judgment controls the application of res judicata.   *Brain*

*Life*, 746 F.3d at 1054.   Here, the newly accused products in *Oyster III* are based on products that

launched prior to the dismissal of *Oyster I/II.[2]*   Traditional claim preclusion bars the accused

activity through the settlement of *Oyster I/II.   Retractable Techs., Inc. v. Becton Dickinson & Co.*,

842 F.3d 883, 899 (5th Cir. 2016); *Maz Encryption*, 347 F. Supp. 3d at 292 (dismissing claims as

to infringement occurring on or before the date that stipulation of dismissal entered in prior case);

*Yeti Coolers v. Wal-Mart Stores, Inc.*, 1:17-cv-1145-RP, 2018 U.S. Dist. LEXIS 227298, at *7

(W.D. Tex. 8/28/18) (denying motion to dismiss, where plaintiff amended complaint to narrow

accused activity to after Res Judicata date). The repeated assertion of the '898 Patent has clear

---

[2] For the '898 Patent, Oyster accuses two product groups: "(1)" a line card; "(2)" line cards that
take a CFP2-DCO module. *Oyster III*, Dkt. 1 ¶ 33.  Based on the evidence cited, these groups were
on sale no later than February, 2019 (¶¶ 13, 33-34, Ex. E) and 2018 (¶¶ 14, 33, 35, Ex F).

overlap in time, space, origin, and motive between the causes of action asserted here and those that were or could have been asserted in *Oyster I/II.  Maz Encryption*, 347 F. Supp. 3d at 291.

### 2.  The Kessler Doctrine Bars the '898 Patent Allegations

The *Kessler* doctrine bars Oyster's allegations of infringement under the '898 Patent for Cisco's continued activity *after* the judgments in *Oyster I/II*.  The *Kessler* doctrine is triggered by a voluntary dismissal with prejudice, and covers future sales.  *In re PersonalWeb*, 961 F.3d at 1379.  The stipulated dismissal of *Oyster I/II* with prejudice conferred upon Cisco "a limited trade right to continue producing, using, and selling . . . without further harassment." *Id.*  Because the products accused of infringing the '898 Patent are essentially the same as the ones previously accused in *Oyster I/II*——a cause of action dismissed with prejudice—Oyster cannot sue Cisco on its dismissed claim.  *Brain Life*, 746 F.3d at 1053; *Adaptix,* 2015 U.S. Dist. LEXIS 111933, at *32–35 (dismissal under *Kessler* doctrine where products essentially the same).

### B.  Oyster's Allegations Under the '516 Patent Are Barred

Additionally, Oyster's infringement claims on the '516 Patent (which Oyster did not assert in *Oyster I/II*) should be barred by res judicata and under the *Kessler* doctrine.

### 1.  Claim Preclusion (Res Judicata) Bars the '516 Patent Allegations

For the same reasons as the '898 Patent, the first three elements of claim preclusion are not in dispute for the '516 Patent. The fourth element is also satisfied, as discussed below.

### a.  '516 Accused Products Either Identical or Essentially the Same

In this action, Oyster accuses all of the products that it accuses for the '898 Patent, plus products based on Cisco's CFP2-ACO pluggable modules.  *Oyster III,* Dkt. 1 ¶ 53. As explained above, the differences between the products accused for the '898 Patent in *Oyster I/II* as compared to *Oyster III* are merely colorable and immaterial to the infringement allegations.

The additional products asserted for the '516 Patent are identical to products that were

named in the prior case.  As shown in Exhibit D, the *Oyster I/II* Complaint accused all Prior Patents of being infringed by CFP2-ACO modules, citing the "OIF CFP2-ACO Standard".  Oyster now attempts to name these identical products again.  Essentially, all products in category "3" of the products accused against the '516 Patent are based on the CFP2-ACO modules Cisco was selling before the filing of the *Oyster I/II* complaint. *E.g. Oyster I,* Dkt. 1 ¶¶ 70, 72.  Accordingly, since the '516 Patent is "essentially the same" as the Prior Patents as shown below—*i.e.*, the patents that Oyster asserted against the CFP2-ACO modules in *Oyster I/II*—then Oyster cannot assert the '516 Patent against the CFP2-ACO modules in this case.  *Maz Encryption,* 347 F. Supp. 3d at 291.  And while Oyster newly accuses the '516 patent of infringing CFP2-DCO modules, Oyster's complaint does not separately analyze or cite any separate documents for the CFP2-ACO as compared to the CFP2-DCO product lines—the complaint treats them the same for infringement purposes (e.g. *Oyster III,* Dkt. 1, ¶¶ 52–65).  *Adaptix,* 2015 U.S. Dist. LEXIS 111933, at *29.

### b.    '516 Patent Is Essentially the Same As the Prior Patents

Claim preclusion can bar a claim for patent infringement even if the patent was not asserted previously, if the scope of the newly asserted patent claims is "essentially the same" as the scope of the claims of a related patent asserted previously. *SimpleAir,* 884 F.3d at 1167; *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,* 672 F.3d 1335, 1341 (Fed. Cir. 2012).  The question is whether the scope of the patent claims is materially different.  *Aspex Eyewear,* 672 F.3d at 1341.

### i.    The Claim Scope of the '516 Patent Is Narrower Than the Claim Scope of the Patents in the Prior Action.

Claim scope is not materially different where the claim scope in the second action is narrower than the scope of the claims in the first action.  *Senju Pharm. Co. v. Apotex Inc.,* 746 F.3d 1344, 1353 (Fed. Cir. 2014); *Aspex Eyewear,* 672 F.3d at 1341; *SimpleAir,* 884 F.3d at 1169.

Here, Oyster pleads its cause of action based on claim 1 of the '516 Patent.  *Oyster III,* Dkt.

1, ¶¶ 54–60 (tracking claim 1).  Claim 1 is the broadest claim in the '516 Patent, but it is still narrower than the broadest claims in the Prior Patents in all material respects.  *Maz Encryption*, 347 F. Supp. 3d at 289–90 (dismissing for claim preclusion based on analysis of independent claims of patent in second suit as compared to the scope of claims in prior suit). Claim 1 of the '516 Patent recites the use of an energy level detector in the form of a photodetector and a comparator that compares a voltage output from the photodetector with a reference voltage(s) to determine whether there is excessive light or too little light being received.  *See* '516 claim 1; Fig. 3. As shown in the attached claim comparison (Ex. C), these concepts were claimed generically in the broadest claims of the Prior Patents.  *See, e.g.,* '327 claim 1 ("energy level detector" that "includes a plurality of thresholds"), '898 claim 14 ("energy level detector including a threshold indicating a drop in amplitude"). As explained above, these detection thresholds are implemented in Figure 3 by comparator 156 and comparator 157. '898 Patent, 5:31-35, 5:60-62, and 6:17-20. Thus, whereas the broadest claims of the Prior Patents claimed Figure 3 generically, the claims of '516 Patent claim specific components.  Those specific components are necessarily within the scope of the broadest claims in the prior action.  Said differently, a cause of action based on using comparators to compare signals to thresholds would fall within the boundaries of the cause of action reflected by the generic threshold claims of the prior action.  *Maz Encryption,* 347 F. Supp. 3d at 290 (limitation specifying a specific encryption algorithm (the "DES" algorithm) not materially different than prior patent claims that generically claim "encryption").

      ii.        **The Claim Scope of the '516 Patent Lacks Patentable Distinctions Over the Claim Scope of the Patents in the Prior Action.**

The Federal Circuit has held "that claims which are patentably indistinct are essentially the same." *SimpleAir*, 884 F.3d at 1167. As shown in the attached claim comparison, the '516 claims do not contain a patentable distinction over the Prior Patents.

Claims drawn to generic structures (like "apparatus") and then specifying well-known components such as photodetectors, voltages and comparators do not amount to a patentable distinction over the patent claims in the prior action. The common specification does not describe these as new components or assign criticality to them. *E.g.,* '516 Patent, 5:38–40 ("other implementation circuits possible"). Furthermore, as shown in Exhibit C, these specific features were present in the claims of the Prior Patents. For example, '327 claim 36 and '511 claims 1 and 9 each recite a "photodetector". '327 claim 36 teaches a photodetector outputting an "electric voltage," and '511 claims 6 and 14 likewise teach a "voltage output". '511 claims (e.g. 5 and 13) recite using a "comparator" to compare a "reference voltage". That these implementation details do not amount to a patentable distinction over the Prior Patents is reinforced by the common reliance on the same preferred embodiment of Figure 3 for support. *See* Fig. 3, '511 Patent, 5:31-35, 5:60-62, and 6:17-20. *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1035 (E.D. Tex. 2019) ("If claims are supported by the same written description, the probability of overlap . . . is higher than if . . . supported by separate specifications.") Finally, during prosecution leading to the '516 patent, Oyster filed a terminal disclaimer over the '327 Patent to overcome a double patenting rejection. Ex. B.[3] While not conclusive, a "terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent." *Simpleair,* 884 F.3d at 1168.

### c.     Overlap in time, space, origin, or motivation

The '516 Patent is a continuation of, and shares identical disclosure, to the Prior Patents. The '516 claims are drawn to the same embodiment (Fig. 3) of the common specification. The claim scope is in all material respects a narrower subset of the claim scope of the Prior Patents.

---

[3] The Court may take judicial notice of prosecution documents. *See, e.g., Xlear, Inc. v. STS Health, LLC*, No. 2:14-CV-00806-DN, 2015 WL 8967574, at *3 (D. Utah Dec. 15, 2015).

Any invention in the '516 Patent is constrained by the disclosure from 2002 when the inventor wrote the specification for the '327 Patent. The current plaintiff would naturally have included the '516 Patent together with the "Group 2 patents" asserted in *Oyster I/II* as a logical trial unit.  Some of the Accused Devices are *identical* to those in *Oyster I/II*; all are at least essentially the same.

As to timing, the '516 Patent issued in February 2019, nearly a year and a half before the consent judgments in *Oyster I/II*. The Federal Circuit has explained that "[w]hether . . . continuation patents present the same cause of action as previously litigated depends on the scope of their claims, not on their dates of issuance."  *SimpleAir*, 884 F.3d at 1169 (rejecting argument that a plaintiff can avoid claim preclusion by showing patent issued after prior action).  All of the accused products are based on transceiver components that entered the market before or during the pendency of *Oyster I/II*.[4]  *Brain Life*, 746 F.3d at 1054 (res judicata date as to products is date of judgment).  Considering these facts pragmatically, this amounts to clear relation and overlap in time, space, origin, and motive between the causes of action asserted on the '516 Patent and those that were or could have been asserted in *Oyster I/II*. *Maz Encryption*, 347 F. Supp. 3d at 291.

### 2.    The Kessler Doctrine Bars Oyster's Allegations Under the '516 Patent

For the same reasons, the *Kessler* doctrine independently bars Oyster's Allegations of infringement under the '516 Patent for Cisco's continued activity *after* the judgments in *Oyster I/II*.  *In re PersonalWeb,* 961 F.3d at 1379.  Because Oyster's cause of action under the '516 patent is essentially the same as its cause of action under the Prior Patents, *Oyster I/II* Oyster cannot continue to harass Cisco after it dismissed the cause of action with prejudice.  *Brain Life,* 746 F.3d at 1053; *Adaptix,* 2015 U.S. Dist. LEXIS 111933, at *32–35.

---

[4] Oyster accuses the same two groups of products on sale by February, 2019 and 2018 as it accuses for the '898 Patent (*supra* n. 2; *Oyster III,* Dkt. 1 ¶¶ 14, 53, 55); and additionally accuses a third group (pluggable CFP2-ACO module), accused in *Oyster I/II*.  Ex. D.

Dated:  August 27, 2020

Respectfully submitted:

*/s/Eric H. Findlay*
Eric H. Findlay
Brian Craft
**FINDLAY CRAFT PC**
102 N College Avenue
Suite 900
Tyler, TX 75702
903/534-1100
Fax: 903/534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

L. Norwood Jameson
wjameson@duanemorris.com
Matthew C. Gaudet
mcgaudet@duanemorris.com
Alice E. Snedeker
aesnedeker@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street
Suite 2000
Atlanta, Georgia 30309
Telephone:  404.253.6900
Facsimile:  404.253.6901

John M. Baird
jmbaird@duanemorris.com
**DUANE MORRIS LLP**
505 9th Street NW, Ste. 1000
Washington, DC  20004
Telephone:  202.776.7819
Facsimile:  202.379.9850

*Attorneys for Defendant Cisco Systems, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on August 27, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.


                     <u>/s/*Eric H. Findlay*</u>
                       Eric H. Findlay