**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OYSTER OPTICS, LLC, | |
| Plaintiff, | Civil Action No. 2:20-cv-00211 |
| vs. | **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC., | |
| Defendant. | |

**DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT AS TO
INFRINGEMENT OF US 8,913,898 AND US 10,205,516**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT
(L.R. CV-7(a)(1)) ...............................................................................................1

III.  FACTUAL BACKGROUND.................................................................................1

    A.    Procedural History of *Oyster I*, *Oyster II* and the Present Case
(*Oyster III*) ............................................................................................... 1

    B.    Overlap in Asserted Patents Between the Cases........................................ 3

    C.    Overlap in Accused Products..................................................................... 5

IV.  LEGAL STANDARDS .........................................................................................7

    A.    Claim Preclusion....................................................................................... 7

    B.    Kessler Doctrine........................................................................................ 8

V.   ARGUMENT.........................................................................................................9

    A.    Oyster's Allegations Under the '898 Patent Are Barred ......................... 9

        1.    Claim Preclusion (Res Judicata) Bars the '898 Patent Allegations ........... 9

            a.    *Oyster I/II* Ended in a "final judgment on the merits" for
claim preclusion purposes...........................................................9

            b.    '898 Accused Products Are Essentially the Same as *Oyster
I/II* ...........................................................................................11

            c.    Overlap in time, space, origin, or motivation ...............................14

        2.    The Kessler Doctrine Bars the '898 Patent Allegations ......................... 15

    B.    Oyster's Allegations Under the '516 Patent Are Barred ...................... 15

        1.    Claim Preclusion (Res Judicata) Bars the '516 Patent Allegations .......... 15

            a.    '516 Accused Products Are Either Identical or Essentially
the Same...................................................................................16

            b.    '516 Patent Is Essentially the Same as the Prior Patents ...............17

            c.    Overlap in time, space, origin, or motivation ...............................19

        2.    The Kessler Doctrine Bars Oyster's Allegations Under the '516 Patent.. 20

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008) ................................................7, 11

*Adaptix, Inc. v. Amazon.com, Inc.,* 5:14-01379, 2015 U.S. Dist. LEXIS 111933
    (N.D. Cal. Aug. 21, 2015) ..........................................................................7, 11-13, 15-17, 20

*Arizona v. California*, 530 U.S. 392 (2000) ......................................................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................10

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) .......................17

*Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045 (Fed. Cir. 2014) ..............................7-10, 14-15, 20

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011) .......................................................................2

*Hallco Mfg. Co., v. Foster*, 256 F.3d 1290 (Fed. Cir. 2001) ......................................................9, 11

*Houston Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443 (5th Cir. 2016) ................. 7-8, 14

*In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303
    (Fed. Cir. 2011) ........................................................................................................................10

*Kessler v. Eldred*, 206 U.S. 285 (1907) .............................................................................1, 8, 15, 20

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616 (Fed. Cir. 1995) ........................8, 14

*Maz Encryp. Techs. v. Blackberry*, 347 F. Supp. 3d 283
    (N.D. Tex. 2018) ..................................................................................... 2, 7, 11, 15-16, 18, 20

*Nuance Commc'ns., Inc. v. ABBYY USA Software House, Inc.,* 813 F.3d 1368
    (Fed. Cir. 2016) ........................................................................................................................10

*Nystrom v. Trex Co.*, 580 F.3d 1281 (Fed. Cir. 2009) ...................................................................11

*Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398 (5th Cir. 2009) ....................................................9

*Oyster I/II. Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883
    (5th Cir. 2016)..........................................................................................................3, 5-6, 9-17, 20

*In re PersonalWeb*, 961 F.3d 1365 (Fed. Cir. 2020) .....................................................8, 11, 15, 20

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021
    (E.D. Tex. 2019) ......................................................................................................................19

*SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348 (Fed. Cir. 2012) ........................................11

*Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) ..................................7, 17

*SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018) ......................................7-8, 17-20

*SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317 (Fed. Cir. 2015) .......................................8

*Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897 (Fed. Cir. 2011)..........................................10

*VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816 (E.D. Tex. 2013) ................................................11

*Xlear, Inc. v. STS Health, LLC*, No. 2:14-CV-00806-DN, 2015 WL 8967574
    (D. Utah Dec. 15, 2015)...............................................................................................................19

*Yeti Coolers v. Wal-Mart Stores, Inc.*, 1:17-cv-1145-RP,
    2018 U.S. Dist. LEXIS 227298 (W.D. Tex. 8/28/18)...............................................................15

## **Other Authorities**

L.R. CV-7(a)(1) .........................................................................................................................1

Restatement (Second) of Judgments § 24(2) (1982) ............................................................7, 14

Rule 12(b)(6).............................................................................................................................7

I.      INTRODUCTION

Defendant Cisco Systems, Inc. ("Cisco") seeks to dismiss the claims of Plaintiff Oyster Optics, LLC ("Oyster") in the First Amended Complaint ("FAC", Dkt. 30) with respect to two of the three patents-in-suit based on res judicata (or claim preclusion) and the *Kessler* doctrine:  U.S. 8,913,898 (the '898 Patent") and U.S. 10,205,516 ("the '516 Patent").  These are issues of law, appropriate for resolution at the motion to dismiss stage.  Oyster previously litigated an expansive case against Cisco in this Court, which was dismissed with prejudice.  Immediately thereafter, Oyster filed this case.  The law precludes Oyster from doing what it seeks here:  have a second bite at the apple by asserting claims that may appear distinct in name but are "essentially the same" in substance as the prior action, against products that are either identical or essentially the same as products in the prior action.  Resolving this issue now will avoid the waste of resources that claim preclusion and the *Kessler* doctrine are intended to prevent.

This is Cisco's second motion to dismiss.  *See* Dkt. 16.  After Oyster reviewed the first motion, Oyster served its Infringement Contentions (Ex. G) and voluntarily filed the FAC, adding certain allegations that attempted to address claim preclusion.  As set forth below, Oyster's Infringement Contentions and FAC only confirm that these two patents should be dismissed.

II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT (L.R. CV-7(a)(1))

1.)  Whether Oyster's infringement allegations for the '898 Patent are barred.

2.)  Whether Oyster's infringement allegations for the '516 Patent are barred.

III.    FACTUAL BACKGROUND

A.      Procedural History of *Oyster I*, *Oyster II* and the Present Case (*Oyster III*)

*Oyster I* (the 2016 Case).  Oyster first sued Cisco in Case 2:16-cv-01301 (*Oyster I),*

asserting 7 patents directed to optical fiber communications. *Oyster I¸* Dkt. 1 ¶ 9.[1] Of those, 3 are pertinent to this motion: U.S. 7,620,327 ("'327 Patent"); U.S. 8,374,511 ("'511 Patent"), and the '898 Patent (collectively, the "Prior Patents"). *Oyster I,* Dkt. 1 Ex. E–G. During *Oyster I*, Oyster withdrew all but the '327 Patent. *Oyster I,* Dkt. 1, 550, 790; Ex. A; FAC ¶¶ 14, 20, 21. In 2018, the Court granted Cisco summary judgment on a release defense based on Oyster's settlement with a Cisco supplier (Fujitsu Network Communications, Inc.). *Id.* at Dkt. 864. The Federal Circuit affirmed. *Id.* at Dkt. 895. On June 18, 2020, pursuant to the parties' stipulation, the Court ordered "all claims, counterclaims, and causes of action asserted by and between Oyster and Cisco in this action are DISMISSED WITH PREJUDICE." *Oyster I,* Dkt. 57.

2018 Severed Case (*Oyster II*). After the Court granted summary judgment in 2018, Oyster severed the products that did <u>not</u> contain a Fujitsu component (and thus were not subject to summary judgment) into a separate action: Case 2:18-cv-00479 ("*Oyster II*"). The Court stayed *Oyster II* pending the appeal in *Oyster I*. *Oyster II,* Dkt. 1. When the Federal Circuit affirmed *Oyster I,* the Court set *Oyster II* for trial. Oyster stipulated to dismissal and, on June 16, 2020, the Court ordered that "all claims, counterclaims, and causes of action asserted by and between Oyster and Cisco in this action are DISMISSED WITH PREJUDICE." *Id.* at Dkt. 39.

2020 Case (*Oyster III*). On June 18, 2020, the same day that *Oyster I* was dismissed, Oyster filed the complaint (Dkt. 1) initiating this action, which Cisco previously moved to dismiss (Dkt. 16). On September 16, Oyster served Cisco with its Infringement Contentions. Ex. G. Thereafter, Oyster voluntarily filed the FAC and then opposed Cisco's motion to dismiss as moot due to the

---

[1] It is proper to take judicial notice of case records. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Maz Encryp. Techs. v. Blackberry*, 347 F. Supp. 3d 283, 293 (N.D. Tex. 2018). This motion cites the pleadings, including infringement contentions, and prior expert reports, as indicative of the scope of allegations in the two cases. Apart from Dkt. 1, all other docket cites to *Oyster I* are to the consolidated case (2:16-cv-01302).

filing of the FAC.  Dkt. 31.  The Court dismissed the motion without prejudice.  Dkt. 33.  The

FAC added certain allegations presumably intended to save Oyster's claims from dismissal.  *See*

FAC ¶¶ 11-21, 46, 67.  As explained below, they do not.

> **B.** **Overlap in Asserted Patents Between the Cases**

The '898 Patent and other Prior Patents.  The asserted '898 Patent is one of the three Prior

Patents asserted in *Oyster I/II*.  FAC Count II and Ex. B; *Oyster I/II,* Dkt. 1, ¶ 9.  The Prior Patents

are continuations:  the '898 Patent is a continuation of the '511 Patent, which is a continuation of

the '327 Patent.  The '898 Patent has a terminal disclaimer over the '327 Patent, shares the same

specification, and has essentially the same claim scope.  Ex. H, I.

The '516 Patent.  The asserted '516 Patent is also a continuation of the Prior Patents, shares

the same specification, and (as discussed below) has a claim scope that is essentially the same.

FAC Count III and Ex. C; *Oyster I/II,* Dkt. 1, ¶ 9.  Additionally, during the prosecution of the '516

Patent, Oyster faced a double-patenting rejection over one of the Prior Patents (the '327 Patent).

In response, Oyster filed a terminal disclaimer.  Ex. B.

The Common Specification. The common specification was originally filed 18 years ago

as the application for the '327 Patent. '516 Patent, Item 63, 1:5-16; '898 Patent, Item 63, 1:7-13.

Oyster filed the application for the '516 Patent 15 years later, in August 2017.

According to Oyster's statements in *Oyster I/II*, the invention of the Prior Patents (treated

together as the "Group 2" patents in *Oyster I/II*) focused on monitoring optical power at a receiver:

> [T]he patents teach novel combinations with receiver-side energy level detectors.
> As shown in the below example, detectors can tap a portion of the optical signal,
> convert the optical energy into an electrical signal, and then average those electrical
> signals. *See, e.g., id.* at Fig. 3. Using this novel approach, the systems can monitor
> the optical power of network transmissions—and do so continuously. The system
> can then trigger alarms if the power falls below various acceptable energy threshold
> values. *See, e.g.,* '327 patent at Fig. 2 at 31, 33, 233.

*Oyster I,* Opening Claim Construction Brief, Dkt. 157, at 6 (referring to the following figures)



'898 Patent, Fig. 2 (partially reproduced).



'898 Patent, Fig. 3 (annotated).  The specification explains that Figure 3 "shows the energy level detector 33 of the present invention in more detail."  *Id.* at 5:25-26.  "A photodetector or other optical to electrical conversion device 153 measures the optical signal coupled to its input by coupler/splitter 31.  The output of photodetector 153 is an electrical voltage whose level correlates to the optical power at the input to the photodetector 153 . . . ."  *Id.* at 5:31-35.  "The electrical signal . . . is compared to reference voltages [Threshold 1, Threshold 2] by one or more comparators [156, 157]."  *Id.* at 5:60-62.  The specification just refers to a "photodetector" and "comparator" without description of their underlying technology; they are conventional components.  "Thus, the circuit of FIG. 3 may be configured to monitor in real time the optical power at the receiver 11 for excess light or too little light to indicate a potential optical tap, tamper or other degradation of the optical signal."  *Id.* at 6:17-20.  The entire specification spans just 6 columns and three figures.  Nonetheless, the four patents contain over 100 claims——80 in the Prior Patents—covering slight variations in describing the energy level detector in Figure 3.

Attached as Exhibit C is a side-by-side claim chart comparing the claim scope of the '516 Patent to the claims of the Prior Patents. The chart is based on claim 1 of the '516 Patent because that is the claim that Oyster used to plead its cause of action and is the only independent claim Oyster asserts in its Infringement Contentions. FAC ¶¶ 68–77 (tracking claim 1); Ex. G, 1. As Exhibit C shows, and as discussed in detail below, the claim scope is essentially the same, and nothing about the scope of the '516 Patent claims is so materially different as would give rise to a second cause of action. Instead, the claims of the '516 Patent fall within the scope of the claims in *Oyster I/II* and on their face do not claim any patentable distinction over features taught by the claims in the prior patents. As to the '898 Patent, there is no difference in claim scope to consider, as that patent is a Prior Patent from *Oyster I/II*.

### C.    Overlap in Accused Products

Some accused products are identical to those previously accused in *Oyster I/II,* and the other accused products are "essentially the same" based on the governing standard. In *Oyster I/II,* Oyster's allegations applied to optical transceivers located in either a card or in a pluggable module (*e.g.*, modules complying with the "OIF CFP2 ACO Standard"). *Oyster I/II* Dkt. 1 ¶ 102. The Complaint in *Oyster III* also accuses optical transceivers in either a card or a module. *E.g.* FAC ¶¶ 47, 48. Exhibit D provides a side-by-side comparison of the allegations between the cases. Certain products are identical, namely the CFP2-ACO modules. Ex. D. Any differences are immaterial to the asserted claims.

In *Oyster I/II*, Oyster accused the same functionality accused now: standard coherent optical transceiver technology with input power monitoring, as specified by the Optical Internetworking Forum ("OIF"). *Oyster I*, Dkt. 1, ¶¶ 70, 89, 91, 102–107. For example, Oyster's complaint in *Oyster I/II* accused optical transceivers using standard Dual Polarization, Quadrature Phase Shift Key (DP-QPSK) modulation formats. *Oyster I*, Dkt. 1 ¶ 102 ("The 100G Accused

Instrumentalities . . . are designed in accordance with Optical Internetworking Forum ("OIF") specifications."). Oyster accused cards and modules having industry-standard, coherent QPSK transmitters and receivers:

 

*Oyster I*, Dkt. 1, ¶¶ 89, 103, 71 (transmitters); *id.* at ¶¶ 91, 105, 76 (receivers). Oyster's expert confirmed this in *Oyster I/II*. Ex. A, ¶¶ 49–50, 75. Now, Oyster again accuses cards and modules having industry-standard, coherent transmitters and receivers:

 

FAC ¶¶ 49, 53, 70. Oyster again points to OIF standards in support. *Id.* at ¶¶ 59, 73.

For the Energy Level Detector limitations, Oyster again accuses "loss of signal" threshold alarms. *Id.* at 58–59, 72–73; Ex. D. Oyster's prior complaint accused products that monitored optical input power against thresholds. *Oyster I*, Dkt. 1, ¶¶ 107, 93, 78. Oyster specifically accused products having a "loss of signal" alarm. *See* Oyster's Opposition to Summary Judgment, *Oyster I/II* Dkt. 353, 3 (accusing Cisco product because it generates "loss of signal indicators."); *id.* at Ex. 2 ¶ 198 ("A "loss of signal" detector is a type of energy level detector that detects when the phase modulated signal falls below a threshold."); *id.* at ¶ 206 (Oyster's expert accusing "The CTP2 Product Requirement Specification discloses various alarm thresholds, including 'Rx Loss

of signal' and 'Rx Loss of optical power.'").

## IV.     LEGAL STANDARDS

Rule 12(b)(6) requires dismissal if a lawsuit fails to state a claim upon which relief may be granted.  Whether a cause of action is barred by claim preclusion is a question of law, *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1165 (Fed. Cir. 2018), appropriately adjudicated at the motion to dismiss stage.  *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) (affirming dismissal for claim preclusion); *Maz Encryption*, 347 F. Supp. 3d at 285; *Adaptix, Inc. v. Amazon.com, Inc.,* 5:14-01379, 2015 U.S. Dist. LEXIS 111933, *10, 29 (N.D. Cal. Aug. 21, 2015).

### A.     Claim Preclusion

"Claim preclusion bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Duffie*, 600 F.3d at 372; *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1053 (Fed. Cir. 2014).  In a patent case, courts "look to the law of the regional circuit in which the district court sits for guidance regarding the principles of claim preclusion; however, whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases, and we therefore apply [Federal Circuit] law to that issue." *Senju*, 746 F.3d at 1348.  Under Fifth Circuit law, "[t]he test for claim preclusion has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Duffie*, 600 F.3d at 372.

Disputes often center on the fourth element, which asks whether the same cause of action is involved in both suits. *Id*. To determine whether causes of action are the same, the Fifth and Federal Circuits apply the "transactional test" of the Restatement (Second) of Judgments. *Houston Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016); *Acumed LLC v. Stryker*

*Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008); *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619-20 (Fed. Cir. 1995) ("[A] party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together."). "The transactional test focuses on whether the two cases 'are based on the same nucleus of operative facts." *Houston Prof'l Towing*, 812 F.3d at 447. "It is the 'nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted' that defines the claim." *Id*. Moreover, "'what factual grouping constitutes a 'transaction,' . . . is to be determined pragmatically giving weight to such consideration as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id*.

"Following the approach taken in the Restatement, we define a cause of action by the transactional facts from which it arises, and we consider the extent of the factual overlap between the two [causes of action]." *In re PersonalWeb*, 961 F.3d 1365, 1374-75 (Fed. Cir. 2020).  If there is a substantial overlap between the transactions of two causes of action, then the later cause of action is normally barred by claim preclusion.  *SimpleAir*, 884 F.3d at 1165.

**B.    Kessler Doctrine**

Under the *Kessler* doctrine (*Kessler v. Eldred*, 206 U.S. 285 (1907)), a judgment of non-infringement bars a plaintiff from accusing post-judgment activity of infringement, filling a temporal gap left by traditional claim preclusion.  *SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1328 (Fed. Cir. 2015); *Brain Life*, 746 F.3d at 1058.  Under the doctrine, a non-infringer may "continue the same activity in which it engaged prior to the infringement allegations once it ha[s] defeated those contentions in the first suit." *Id*. at 1056. It prevents "repeated harassment for continuing its business as usual post-final judgment."  *Id*.  A voluntary dismissal with prejudice is a judgment of non-infringement for purposes of the doctrine. *In re PersonalWeb*, 961 F.3d at 1379.

8

## V.      ARGUMENT

### A.      Oyster's Allegations Under the '898 Patent Are Barred

#### 1.      Claim Preclusion (Res Judicata) Bars the '898 Patent Allegations

All elements of the Fifth Circuit's claim preclusion test are satisfied.  The first two elements are straightforward.  **First,** the identical parties are involved.  **Second,** this Court rendered the prior judgments, and is unquestionably a court of competent jurisdiction.  As discussed below, the third and fourth elements are satisfied as well.

##### a.      *Oyster I/II* Ended in a "final judgment on the merits" for claim preclusion purposes

The **third** element is satisfied because there has been a final judgment on the merits for claim preclusion purposes.  Both *Oyster I* and *Oyster II* ended with stipulated dismissals with prejudice.  *Oyster I,* Dkt. 57; *Oyster II,* Dkt. 39.  A dismissal with prejudice is a final judgment on the merits for claim preclusion purposes. *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009); *Brain Life*, 746 F.3d 1053; *Hallco Mfg. Co., v. Foster*, 256 F.3d 1290, 1295-1298 (Fed. Cir. 2001) (in absence of expressly reserving party's right to litigate some or all issues that would otherwise be subject to claim preclusion pursuant to judgment, a consent judgment has the same claim-preclusive effect as judgment entered after trial on merits). This is because a consent judgment (*e.g.*, agreed dismissal with prejudice) ordinarily is intended to preclude any further litigation on the cause of action.  *Arizona v. California*, 530 U.S. 392, 414 (2000).

Nonetheless, the FAC asserts a legal contention that the '898 Patent should be treated as having been voluntarily dismissed *without prejudice* as part of its reduction of asserted claims during the course of *Oyster I/II*, and thus posits that it has carte blanche to reassert the '898 Patent. FAC ¶¶ 13–15.  This is a question of law, about which no deference is owed to the allegations in the FAC; Oyster cannot avoid a motion to dismiss by pleading an incorrect statement of law.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, Oyster admits that it did not file any dismissal without prejudice of the '898 Patent; there is no pleading to the contrary in the FAC.  Likewise, the Court can take judicial notice of the fact that the final judgments entered in *Oyster I/II* were not limited to a particular subset of patents, but instead went to Oyster's cause of action, including the '898 Patent.  *Oyster I,* Dkt. 57; *Oyster II,* Dkt. 39.  As a matter of law, these judgments *with prejudice* disposed of the patents and claims that Oyster chose not to pursue in its case narrowing.  *Nuance Commc'ns., Inc. v. ABBYY USA Software House, Inc.,* 813 F.3d 1368, 1374-76 (Fed. Cir. 2016) (final judgment "did not exempt any of Nuance's causes of action or reserve judgment on any of Nuance's patents that it chose not to pursue at trial."); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311–13 (Fed. Cir. 2011); *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902 (Fed. Cir. 2011).

Moreover, even if Oyster had moved to dismiss the '898 Patent without prejudice (something it did not do and Cisco would have opposed), the Federal Circuit has explained that once the case as a whole is dismissed *with prejudice,* claim preclusion still attaches:

> [Plaintiff argues] that the final judgment in the [prior] action would not act to bar the assertion of any claims of infringement of the method claims in the [patent].  It premises this argument on its belief that the dismissal without prejudice of those claims gave it carte blanche to reassert those claims. We disagree. While the dismissal without prejudice allowed for the possibility that acts of infringement of the method claims could be subject to a future cause of action, that possibility was cut-off for all such acts predating the final [prior] judgment once that judgment was entered.

*Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1053 (Fed. Cir. 2014).  The underlying policy is to vindicate the resources dedicated to the prior litigation in which Cisco had to litigate (until Oyster surrendered) all seven patents-in-suit pled in the *Oyster I/II* complaint.  It would be particularly unsettling for Plaintiff to be allowed to sue on three highly duplicative "Group 2" patents ('327, '898, and '511), pick its best patent ('327), lose, and then turn around and have cart blanche to

reassert the runner ups ('898 or '511).  That type of claim splitting is prohibited.

Oyster's authorities are inapposite.  FAC ¶ 15.  Oyster cites *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012), but the case does not address claim preclusion at all, much less case-dispositive consent judgments with prejudice.  *Id.*  Oyster also cites *VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 849 (E.D. Tex. 2013), which does not address claim preclusion or consent judgments, and which stands for the unremarkable position that a court should not render judgment on invalidity for patent claims that are not at issue.  *Id.*

### b.     '898 Accused Products Are Essentially the Same as *Oyster I/II*

In the **fourth** element, courts consider "the overlap of the product or process accused in the instant action with the product or process accused in the prior action."  *In re PersonalWeb*, 961 F.3d at 1374-75.  "[A]n overlap in accused devices is also a critical transactional fact to consider when determining whether a new cause of action is the same as an old cause of action."  *Maz Encryption*, 347 F. Supp. 3d at 290.  Claim preclusion applies if accused products are "essentially the same."  *In re PersonalWeb*, 961 F.3d at 1374-75.  "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent."  *Id.* (citing *Acumed*, 525 F.3d at 1324 and *Foster*, 947 F.2d at 480); *Nystrom v. Trex Co.*, 580 F.3d 1281, 1286 (Fed. Cir. 2009) (affirming res judicata where different wood grain not materially different to "wood cut from a log" limitation).

Courts have granted motions to dismiss under similar circumstances as here.  For example, in a series of related cases, a plaintiff newly accused a set of tablet and handset products that "were not even on the market during the pendency" of the prior litigation, but the court held claim preclusion applied because they were "essentially the same" in that the products were directed to the same, industry standard cellular technology.  *Adaptix, Inc. v. Amazon.com, Inc.*, 5:14-cv-01379, 2015 U.S. Dist. LEXIS 111933, at *10, 29 (N.D. Cal. Aug. 21, 2015) ("Now, as then, the

accused functionality is based on the 3GPP LTE industry standard.")

As described above and in Exhibit D, all of the '898 Patent Accused Products are "essentially the same" as what was accused of infringing that patent in *Oyster I/II* because any differences are merely colorable or unrelated to the limitations in the patent claims. In both litigations (*Oyster I/II* and *III*), the accused products are coherent optical transceivers disposed in a line card or module. Ex. D. The transmitters (coherent QPSK modulators), receivers (coherent receivers) and optical power monitoring (Loss of Signal and/or monitoring photodiode) between the cases are all essentially the same, without differences that would be material to the claim limitations. This is technology specified by the Optical Interworking Forum (OIF). *Oyster I,* Dkt. 1 ¶ 70–71. The differences in the products go to capacity and form, and they are not material to the claim limitations of the '898 Patent. *See Adaptix,* 2015 U.S. Dist. LEXIS 111933, at *14.

Indeed, Oyster's allegations in its Infringement Contentions are not materially different as between CFP2 modules and an integrated line card. The Contentions do <u>not</u> separately chart these products; they all rise or fall based on the same "exemplary" product. The Contentions do <u>not</u> provide an element-by-element analysis of the CFP2-DCO product. Ex. G ('898 chart, 18, referring once to a CFP2-DCO). Instead, the chart maps the asserted claims to an "exemplary" line card: "The infringement chart below is based on the Cisco's NCS 1004 1.2Tbps Line Card transceiver ("NCS 1004"), which is exemplary of the infringement of the '898 Patent." *Id.* at 1.

Oyster makes conclusory—but legally insufficient—allegations in the FAC of "substantial differences" between the products in the two cases. FAC ¶ 46. Even deeming those factual allegations true for purposes of this motion, they are legally irrelevant because Oyster fails to allege that any difference *is meaningful to a claim limitation*. *Id.* In other words, the mere fact that the products have "substantial differences" is irrelevant by itself; differences only matter if

they are material to a claim limitation.  Each of these allegations in the FAC is addressed below.

First, Oyster alleges in the FAC that the CFP2-ACO products of the prior case fall under different OIF standards than the OIF's standards for the CFP2-DCO.  *Id.*  But Oyster does not allege or otherwise explain how the OIF standards differ as to a claim limitation.  Oyster alleges merely that "the 'A' in 'ACO' stands for 'Analog' and the 'D' in 'DCO' stands for digital" without alleging that the distinction makes a difference to any claim limitation.  *Id.*  In fact, the asserted claims of the '898 Patent do not refer to "analog" or "digital."  Furthermore, Oyster fails to account for the fact that in *Oyster I/II* it accused not just the OIF CFP2-ACO standards, but the broader standard that Oyster referred to as the "OIF 100G Standard."  *E.g. Oyster I,* Dkt. 1, ¶¶ 71, 76, 78.  Oyster does not allege that any presently accused device has accused functionality that is outside the scope of the previously accused "OIF 100G standard", but instead accuses the same type of coherent transmitters and receivers described in the OIF 100G standard.  *See id.*

Second, Oyster alleges in the FAC that CFP2-DCO modules are "CFP2 modules" and that under Cisco's arguments in the prior case, a CFP2-module is materially different than "anything accused in the *Infringement Contentions*" in *Oyster I/II.*  FAC ¶¶ 16–18, 46 (emphasis added).  The background to the quoted statement (all of which is appropriate for judicial notice) confirms why preclusion applies.  Oyster had specifically accused CFP2-modules in the Complaint, which established the cause of action.  Oyster then failed to identify CFP2-modules in its infringement contentions.[2]  Oyster thus failed to prosecute the CFP2-modules in its case, and the Court denied Oyster's motion to compel because Oyster accused them in the complaint (and thus knew about them), but then subsequently failed to pursue its claim.  FAC ¶ 20; *Oyster I,* Dkt. 326.  For

---

[2]  The main difference between an "integrated line card" and a CFP2 module is that the optical transceiver is integrated in the line card in the former, but in the latter, it is on the CFP2 module which is plugged into a line card. FAC ¶ 17.

preclusion purposes, Oyster brought its cause of action against integrated line cards and CFP2 modules.  As Oyster admits in the first two sentences of the same paragraph (FAC ¶ 46), the products accused of infringement in *Oyster I/II* included CFP2-ACO modules, a CFP2 module.

To be clear, withdrawing allegations against a product does ***not*** operate to save Oyster from claim preclusion.  Oyster was required to litigate the CFP2 modules in *Oyster I,* and claim preclusion now bars both claims that were "brought," as well as those that "could have been brought." *See, e.g., Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619-20 (Fed. Cir. 1995) ("It is well established that a party may not split a cause of action into separate grounds in successive lawsuits; instead a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together.") (citing Restatement (Second) of Judgments § 24(2) (1982)); *Brain Life*, 746 F.3d at 1053.  By accusing the CFP2 modules in the *Oyster I* complaint, Oyster unequivocally "brought" its claim against CFP2 modules.  Oyster cannot escape claim preclusion by arguing that it intended to engage in claim splitting—the very thing that claim preclusion prohibits.  *Id.*

### c.    Overlap in time, space, origin, or motivation

Further satisfying the **<u>fourth</u>** element, the infringement allegations share a common nucleus of fact, as shown by the number of facts that are related in time, space, origin, and motive. *Houston Prof'l Towing*, 812 F.3d at 447.  The '898 Patent is a Prior Patent, by definition directed to the same invention, having the same inventor, originating from the same start-up company, and asserted by the same non-practicing entity in an effort to monetize a purported invention conceived over 18 years ago.  Likewise, the Accused Devices are essentially the same.

As to timing, the date of the prior judgment controls the application of res judicata such that activity before that date cannot be accused again.  *Brain Life*, 746 F.3d at 1054.  Here, the newly accused products in *Oyster III* are based on products that were on sale prior to the dismissal

14

of *Oyster I/II.*[3]  Traditional claim preclusion bars the accused activity through the settlement of *Oyster I/II.  Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 899 (5th Cir. 2016); *Maz Encryption*, 347 F. Supp. 3d at 292; *Yeti Coolers v. Wal-Mart Stores, Inc.*, 1:17-cv-1145-RP, 2018 U.S. Dist. LEXIS 227298, at *7 (W.D. Tex. 8/28/18).  There is thus clear overlap in time, space, origin, and motive with the causes of action that were or could have been asserted in *Oyster I/II.  Maz Encryption*, 347 F. Supp. 3d at 291.

### 2.      The *Kessler* Doctrine Bars the '898 Patent Allegations

For the same reasons, the *Kessler* doctrine bars Oyster's allegations of infringement under the '898 Patent for Cisco's continued activity *after* the judgments in *Oyster I/II*.  The *Kessler* doctrine is triggered by a voluntary dismissal with prejudice, and covers future sales.  *In re PersonalWeb*, 961 F.3d at 1379.  The stipulated dismissals of *Oyster I/II* with prejudice conferred upon Cisco "a limited trade right to continue producing, using, and selling . . . without further harassment."  *Id.*  Because the products accused of infringing the '898 Patent are essentially the same as the ones previously accused in *Oyster I/II*, the *Kessler* doctrine bars Oyster's cause of action under the '898 Patent.  *Brain Life*, 746 F.3d at 1053; *Adaptix,* 2015 U.S. Dist. LEXIS 111933, at *32–35 (dismissal under *Kessler* doctrine where products essentially the same).

### B.      Oyster's Allegations Under the '516 Patent Are Barred

Additionally, Oyster's infringement claims on the '516 Patent (which Oyster did not assert in *Oyster I/II*) should be barred by res judicata and under the *Kessler* doctrine.

### 1.      Claim Preclusion (Res Judicata) Bars the '516 Patent Allegations

For the same reasons as the '898 Patent, the first three elements of claim preclusion are not

---

[3] The FAC asserts the '898 Patent against two product groups: "(1)" an integrated line card; "(2)" line cards taking a CFP2-DCO module. FAC ¶ 45.  Based on the FAC, these groups were on sale no later than February, 2019 (FAC ¶¶ 25, 45, 47; Ex. E) and 2018 (FAC ¶¶ 26, 45, 48; Ex F).

in dispute for the '516 Patent.  The fourth element is also satisfied, as discussed below.

>    **a.    '516 Accused Products Are Either Identical or Essentially the Same**

For the '516 Patent, Oyster accuses all of the products that it accuses for the '898 Patent, plus products based on Cisco's CFP2-ACO modules.  FAC ¶ 66. As explained above for the '898 Patent, the differences between the products accused in *Oyster I/II* as compared to *Oyster III* are merely colorable and immaterial to the infringement allegations.

The products asserted for the '516 Patent (but not the '898 Patent) are identical to products that were named in the prior case.  As shown in Exhibit D, the *Oyster I/II* Complaint accused all Prior Patents of being infringed by CFP2-ACO modules, citing the "OIF CFP2-ACO Standard." Oyster now attempts to name these identical products again.  All products in category "3" of the products accused against the '516 Patent are based on the CFP2-ACO modules Cisco was selling before the filing of the *Oyster I/II C*omplaint*.  E.g. Oyster I,* Dkt. 1 ¶¶ 70, 72.  Accordingly, since the '516 Patent is "essentially the same" as the Prior Patents as shown below—*i.e.*, the patents that Oyster asserted against the CFP2-ACO modules in *Oyster I/II*—then Oyster cannot assert the '516 Patent against the CFP2-ACO modules in this case.  *Maz Encryption,* 347 F. Supp. 3d at 291.

Oyster's infringement allegations in this case lump the products together.  While Oyster newly accuses the CFP2-DCO modules, the FAC does not analyze them separately from the CFP2-ACO (accused in both suits), treating them the same for infringement purposes (e.g. FAC ¶¶ 65–79).  *Adaptix,* 2015 U.S. Dist. LEXIS 111933, at *29.  As with the '898 Patent, Oyster's Infringement Contentions for the '516 Patent further confirm that Oyster is treating the various products as being the same as they relate to the claim limitations.  The Contentions do <u>not</u> separately chart the CFP2-ACO or CFP2-DCO products.  For example, other than listing the CFP2-ACO products (in group "3") in their header, the Contention charts for the '516 Patent do

not refer at all to those products.  Ex. G ('516 chart).  And they only make a few isolated references to the CFP2-DCO material as "another example" supporting infringement.  *E.g. id.* at 7, 8 and 10. Instead, the Contentions map the '516 claims to an "exemplary" integrated line card: "The infringement chart below is based on the Cisco's NCS 1004 1.2Tbps Line Card transceiver ("NCS 1004"), which is exemplary of the infringement of the '898 Patent."  *Id.* at 1.  Thus, the Infringement Contentions confirm that dismissal is appropriate.

Oyster's conclusory allegations in the FAC that the accused products are "different" (FAC ¶ 67) fail for the same reasons discussed above for the '898 Patent.  Namely, Cisco's statements were about CFP2 modules being different to integrated line cards, but Oyster brought (and so by definition could have brought) claims against *both* of these product types in *Oyster I/II.  Supra* § V.A.1.b.  Thus, Oyster's argument that Cisco's prior statements distinguish the products in *Oyster III* from *Oyster I/II* is a non-sequitur—both cases have both types of products.

### b.     '516 Patent Is Essentially the Same as the Prior Patents

Claim preclusion can bar a claim for patent infringement even if the patent was not asserted previously, if the scope of the newly asserted patent claims is "essentially the same" as the scope of the claims of a related patent asserted previously. *SimpleAir*, 884 F.3d at 1167; *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1341 (Fed. Cir. 2012).  The question is whether the scope of the patent claims is materially different.  *Aspex Eyewear*, 672 F.3d at 1341.

### i.     The Claim Scope of the '516 Patent Is Narrower Than the Claim Scope of the Patents in the Prior Action.

Claim scope is not materially different where the claim scope in the second action is narrower than the scope of the claims in the first action.  *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1353 (Fed. Cir. 2014); *Aspex Eyewear*, 672 F.3d at 1341; *SimpleAir*, 884 F.3d at 1169.

Here, Oyster pleads its cause of action based on claim 1 of the '516 Patent.  FAC ¶¶ 68–

77 (tracking claim 1).  The FAC does not compare the scope of the '516 Patent to the Prior Patents. Claim 1 is the broadest claim in the '516 Patent, but it is still narrower than the broadest claims in the Prior Patents in all material respects.  *Maz Encryption*, 347 F. Supp. 3d at 289–90 (dismissing for claim preclusion based on comaprison of independent claims of patent in second suit with scope of claims in prior suit). Claim 1 recites the use of an energy level detector in the form of a photodetector, and a comparator that compares a voltage output from the photodetector with a reference voltage(s) to determine whether there is excessive light or too little light being received. *See* '516 claim 1; Fig. 3. As shown in the attached claim comparison (Ex. C), these concepts were claimed generically in the broadest claims of the Prior Patents.  *See* '327 claim 1 ("energy level detector" that "includes a plurality of thresholds"), '898 claim 14 ("energy level detector including a threshold indicating a drop in amplitude"). As explained above, these detection thresholds are implemented in Figure 3 by comparator 156 and comparator 157. '898 Patent, 5:31-35, 5:60-62, and 6:17-20.  Thus, whereas the broadest claims of the Prior Patents claimed Figure 3 generically, the claims of '516 Patent claim specific components.  Those specific components are necessarily within the scope of the broadest claims in the prior action.  Said differently, a cause of action based on using comparators to compare signals to thresholds would fall within the boundaries of the cause of action reflected by the generic threshold claims of the prior action.  *Maz Encryption,* 347 F. Supp. 3d at 290 (limitation specifying a specific encryption algorithm (the "DES" algorithm) not materially different than prior patent claims that generically claim "encryption").

      **ii.**  **The Claim Scope of the '516 Patent Lacks Patentable Distinctions Over the Claim Scope of the Prior Patents.**

   The Federal Circuit has held "that claims which are patentably indistinct are essentially the same." *SimpleAir*, 884 F.3d at 1167. As shown in the attached claim comparison, the '516 claims do not contain a patentable distinction over the Prior Patents.  Ex. C.

Claims drawn to generic structures (like "apparatus") and then specifying well-known components such as photodetectors, voltages and comparators do not amount to a patentable distinction over the patent claims in the prior action.  The common specification does not describe these as new components or assign criticality to them.  *E.g.,* '516 Patent, 5:38–40 ("other implementation circuits possible").  Furthermore, as shown in Exhibit C, these specific features were present in the claims of the Prior Patents.  For example, '327 claim 36 and '511 claims 1 and 9 each recite a "photodetector".  '327 claim 36 teaches a photodetector outputting an "electric voltage," and '511 claims 6 and 14 likewise teach a "voltage output".  '511 claims (e.g. 5 and 13) recite using a "comparator" to compare a "reference voltage."  That these implementation details do not amount to a patentable distinction over the Prior Patents is reinforced by the common reliance on the same preferred embodiment of Figure 3 for support. *See* Fig. 3, '511 Patent, 5:31-35, 5:60-62, and 6:17-20.  *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1035 (E.D. Tex. 2019) ("If claims are supported by the same written description, the probability of overlap . . . is higher than if . . . supported by separate specifications.")  Finally, during prosecution leading to the '516 patent, Oyster filed a terminal disclaimer over the '327 Patent to overcome a double patenting rejection.  Ex. B.[4]  While not conclusive, a "terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent."  *Simpleair,* 884 F.3d at 1168.

### c.    Overlap in time, space, origin, or motivation

The '516 Patent is a continuation of, and shares identical disclosure, to the Prior Patents.  The '516 claims are drawn to the same embodiment (Fig. 3) of the common specification.  The claim scope is in all material respects a narrower subset of the claim scope of the Prior Patents.

---

[4]  The Court may take judicial notice of prosecution documents. *See, e.g., Xlear, Inc. v. STS Health, LLC*, No. 2:14-CV-00806-DN, 2015 WL 8967574, at *3 (D. Utah Dec. 15, 2015).

Any invention in the '516 Patent is constrained by the disclosure from 2002 when the inventor wrote the specification for the '327 Patent.  The '516 Patent would naturally fit in the "Group 2 patents" in *Oyster I/II* as a logical trial unit.  Some of the Accused Devices are *identical* to those in *Oyster I/II*; all are at least essentially the same.

As to timing, the '516 Patent issued in February 2019, nearly a year and a half before the consent judgments in *Oyster I/II*. The Federal Circuit has explained that "[w]hether . . . continuation patents present the same cause of action as previously litigated depends on the scope of their claims, not on their dates of issuance."  *SimpleAir*, 884 F.3d at 1169 (rejecting argument claim preclusion does not extend to patents issued after prior action).  All of the accused products are based on transceivers that entered the market before or during *Oyster I/II*.[5]  *Brain Life*, 746 F.3d at 1054 (date of judgment controls res judicata).  Considering these facts pragmatically, this amounts to clear relation and overlap in time, space, origin, and motive with the causes of action that were or could have been brought in *Oyster I/II*.  *Maz Encryption*, 347 F. Supp. 3d at 291.

2.      **The Kessler Doctrine Bars Oyster's Allegations Under the '516 Patent**

For the same reasons, the *Kessler* doctrine independently bars Oyster's Allegations of infringement under the '516 Patent for Cisco's continued activity *after* the judgments in *Oyster I/II.  In re PersonalWeb,* 961 F.3d at 1379.  Because Oyster's cause of action under the '516 patent is essentially the same as its cause of action under the Prior Patents, Oyster cannot continue to harass Cisco after it dismissed the cause of action with prejudice.  *Brain Life,* 746 F.3d at 1053; *Adaptix,* 2015 U.S. Dist. LEXIS 111933, at *32–35.

---

[5] The FAC asserts the '516 Patent against products on sale by February 2019 and 2018 (*supra* n. 2; FAC ¶¶ 26, 66, 69); and against CFP2-ACO modules accused in *Oyster I/II.*  Ex. D.

Dated:  October 8, 2020

Respectfully submitted:

*/s/Eric H. Findlay*
Eric H. Findlay
Brian Craft
**FINDLAY CRAFT PC**
102 N College Avenue
Suite 900
Tyler, TX 75702
903/534-1100
Fax: 903/534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

L. Norwood Jameson
wjameson@duanemorris.com
Matthew C. Gaudet
mcgaudet@duanemorris.com
Alice E. Snedeker
aesnedeker@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street
Suite 2000
Atlanta, Georgia 30309
Telephone:  404.253.6900
Facsimile:  404.253.6901

John M. Baird
jmbaird@duanemorris.com
**DUANE MORRIS LLP**
505 9th Street NW, Ste. 1000
Washington, DC  20004
Telephone:  202.776.7819
Facsimile:  202.379.9850

*Attorneys for Defendant Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 8, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/Eric H. Findlay*
Eric H. Findlay