**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| OYSTER OPTICS, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:20-CV-00211-JRG |
| | § | |
| CISCO SYSTEMS, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint as to Infringement of U.S. 8,913,898 and U.S. 10,205,516 filed by Defendant Cisco Systems, Inc. (the "Motion") (Dkt. No. 37). In the Motion, Defendant asks the Court to dismiss Plaintiff Oyster Optics, LLC's First Amended Complaint as to the allegations of infringement of U.S. Patent Nos. 8,913,898 (the "'898 Patent") and 10,205,516 (the "'516 Patent") (collectively, the "patents-in-suit") based on theories that *res judicata* and the *Kessler* doctrine bar litigation of those patents in the above-captioned case. Having considered the Motion, the subsequent briefing, and for the reasons set forth herein, the Court is of the opinion that the Motion should be **DENIED**.

## I.    BACKGROUND

On November 24, 2016, Oyster Optics, LLC ("Plaintiff" or "Oyster") filed a lawsuit against Cisco Systems, Inc. ("Defendant" or "Cisco"), alleging infringement of seven patents, including the '898 Patent, U.S. Patent No. 8,374,511 (the "'511 Patent"), and U.S. Patent No. 7,620,327 (the "'327 Patent"). (Case No. 2:16-cv-01301 ("*Oyster I*"), Dkt. No. 1.) On December 8, 2017, Oyster dropped all claims related to the '898 Patent from the case in response to the Court's Order instructing the parties, in accordance with their prior agreement, to narrow the

dispute.  (Dkt. No. 30 at 4.)  On September 4, 2018, the Court granted Cisco's motion for partial summary judgment, concluding that Oyster had released some of the accused products from claims of infringement in a prior license agreement.  (Case No. 2:16-cv-01302, Dkt No. 826.)  The parties then jointly moved to sever the case for the products not subject to the grant of summary judgment and administratively close *Oyster I*.  (*Id.*, Dkt No. 845.)

In the severed case, a joint Pretrial Order was filed on June 8, 2020, in which Oyster further narrowed the claims at issue to only claims 5, 11, 18, 25, and 29 of the '327 Patent.  (Case No. 2:18-cv-00479 ("*Oyster II*"), Dkt. No. 29.)   On June 16, 2020, the Court accepted and acknowledged an agreed stipulation between the parties that "all claims, counterclaims, and causes of action asserted by and between Oyster and Cisco in this action are DISMISSED WITH PREJUDICE."  (*Oyster II*, Dkt. No. 39.)

Oyster filed the above-captioned suit on June 18, 2020, asserting certain claims from the patents-in-suit, including the claims from the '898 Patent it had originally asserted in *Oyster I*. (Dkt. No. 1.)  The patents-in-suit are interrelated and share a common specification.  The '898 Patent is a continuation of the '511 Patent, which itself is a continuation of the '327 Patent.  (Dkt. No. 37 at 7.)  The '511 Patent and '327 Patent are both parent applications to the '516 Patent.  (*Id.*) During prosecution of both the '898 Patent and the '516 Patent, the applicant filed terminal disclaimers to overcome double-patenting rejections related to the '327 Patent.  (*Id.*)

## II.    LEGAL STANDARD

The Court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) where a party has "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must assume that all well-pleaded facts are true and must view them in a light most favorable to the non-moving party.  *Bowlby v. City of*

*Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  The Court must decide whether those facts state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby*, 681 F.3d at 219 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678 (2009)).

Under the doctrine of claim preclusion, or *res judicata*, "a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955) (quotation marks omitted). More generally, "[c]laim preclusion bars the litigation of claims that have been litigated or should have been raised in an earlier suit." *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010) (quotation marks omitted).  The test for claim preclusion in the Fifth Circuit has four elements: "(1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Id*.  With regard to the fourth element, courts consider whether two cases "are based on the same nucleus of operative facts." *Houston Prof'l Towing Assoc. v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (quotation marks omitted).  "Res judicata is an affirmative defense . . . and thus the movant bears the burden of establishing that its requirements are satisfied." *Welsh v. Fort Bend Indep. Sch. Dist.*, 860 F.3d 762, 764 (5th Cir. 2017).

In the patent context, courts look to the law of the regional circuit for "guidance regarding the principles of claim preclusion," but apply Federal Circuit law because "whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases." *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1348 (Fed. Cir.

3

2014).  "[W]here different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same."  *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018).  "[T]he claim preclusion analysis requires comparing the patents' claims along with other relevant transactional facts."  *Id*. at 1168.  "[C]laims which are patentably indistinct are essentially the same."  *Id*. at 1167.

 "[C]laim preclusion does not bar a party from asserting infringement based on activity occurring after the judgment in the earlier suit;" however, the so-called *Kessler* doctrine fills that gap by "preclud[ing] assertions of a patent against even post-judgment activity if the earlier judgment held that 'essentially the same' accused activity did not infringe that patent."  *SimpleAir*, 884 F.3d at 1170.  Originating from the Supreme Court's decision in *Kessler v. Eldred*, 206 U.S. 285 (1907), the *Kessler* Doctrine "protects an adjudged *non-infringer* from repeated harassment for continuing its business as usual post-final judgment."  *Id*. (internal quotation marks omitted) (emphasis in original).

The application of claim preclusion, as well as the *Kessler* Doctrine, requires a "careful inquiry."  *SimpleAir*, 884 F.3d at 1169 (internal quotation marks omitted) (citing *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  While these mechanisms "encourage[] reliance on judicial decisions, bar[] vexatious litigation, and free[] the courts to resolve other disputes," they likewise "shield[] the fraud and the cheat as well as the honest person."  *Id*.

## III.   ANALYSIS

Cisco contends that Oyster should be barred by *res judicata* from litigating the asserted claims of the '516 Patent in this case because they are "essentially the same" as the claims of the '898, '327, and '511 Patents that were at issue in the earlier *Oyster I* and *Oyster II* cases.  (Dkt.

No. 37 at 21.)  Cisco further contends that the asserted claims of the '898 Patent should be barred because the dismissal with prejudice of "all claims, counterclaims, and causes of action" in *Oyster II* constituted a final judgment on the merits of non-infringement of all originally asserted claims of the '898, '327, and '511 Patents.  (*Id*. at 13.)

Oyster does not contest that the first two factors of the *res judicata* analysis are satisfied for either patent-in-suit.  However, with regard to the '516 Patent, Oyster contends that the asserted claims do not present the same claim or cause of action as any of the prior suits.  (Dkt. No. 47 at 15.)  With regard to the '898 Patent, Oyster contends that the Court did not render a final judgment on the merits for the asserted claims because they were removed from the suit prior to the dismissal with prejudice.  (*Id*. at 12.)  For the reasons stated below, the Court finds that Cisco has not proven that *res judicata* bars the asserted claims of either the '516 Patent or the '898 Patent.

### A.  Cisco Has Not Proven that *Res Judicata* Bars the Claims of the '516 Patent

Cisco contends that *res judicata* bars the asserted claims of the of '516 Patent because those claims are "essentially the same" as the claims asserted in *Oyster I* and *Oyster II*.  (Dkt. No. 37 at 21.)  To prove this point, Cisco provides the Court with a chart showing a side-by-side comparison of various claims of the patents-in-suit.  (Dkt. No. 37, Ex. C.)  The chart includes claim 1 of the '516 Patent—the "broadest" claim according to Cisco (Dkt. No. 37 at 22)—and compares the elements of that clams to several claims in the '898, '327, and '511 Patents.  (Dkt. No. 37, Ex. C.)  Cisco requests that the Court conclude from this chart that any differences in claim scope are merely "colorable" or "immaterial."  (Dkt. No. 37 at 20.)

In response, Oyster first disputes that the dismissal in *Oyster II* was a final judgment on anything other than claims 5, 11, 18, 25, and 29 of the '327 Patent, as the case had been narrowed to only those claims prior to the dismissal.  (Dkt. No. 47 at 16 n.2.)  However, Oyster argues that

even if claim preclusion applied to all patents and all claims originally asserted in *Oyster I* and *Oyster II*, it is clear from Cisco's chart that there are substantial differences between the claims of the '516 Patent and the claims of the '327, '898, and '511 Patents that render the claims not essentially the same. (*Id*. at 17-18.) Oyster goes on to make fact-specific arguments related to the scope of the claims. (*Id*.)

Both parties thus invite the Court to make factual findings comparing the scope of the claims of the '516 Patent to those of the '898, '327, and '511 Patents. The Court declines to do so. The comparison of different claims in different patents for the purpose of determining whether they are "essentially the same" is a question of fact, not a question of law. It is the Court's role to clarify the scope of the claims through the claim construction process, but it is the province of the jury to draw factual conclusions from comparisons of the properly construed claims. This is true in an infringement analysis where the construed claims are compared to an accused product, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), and in an obviousness-type double patenting analysis where the claims of one patent are compared to the claims of an earlier patent, *St. Jude Med., Inc. v. Access Closure, Inc.*, 729 F.3d 1369, 1375 (Fed. Cir. 2013) ("Implicit in the jury's double patenting finding was the jury's conclusion that claims 7, 8, and 9 of the Janzen patent were not patentably distinct from claim 7 of the sibling patent."). The Court concludes that the same principles apply here, and the question of whether the claims are essentially the same presents a question of fact for the jury to decide.

The parties rightly contend that a determination of whether *res judicata* applies is a question of law that may be resolved at the motion to dismiss stage. *Senju*, 746 F.3d at 1348.[1] In

---

[1] The Court rejects Cisco's argument that *Senju* stands for the broad proposition that "[t]he need to evaluate alleged differences in claim language does not preclude dismissal on the pleadings." (Dkt. No. 48 at 2.) In that case, the Court determined that the *res judicata* could be resolved at the 12(b)(6) stage because the claims in question were issued as a result of reexamination procedures and therefore were presumed narrower and within the scope of the

this case, however, such a legal conclusion must be based on subsidiary factual findings regarding whether the claims allegedly subject to *res judicata* are "essentially the same" as previously litigated claims.  The party asserting claim preclusion has the burden of showing that the asserted patent claims in the two suits are essentially the same.  *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) ("[T]he party asserting claim preclusion has the burden of showing that the accused devices are essentially the same."); *SimpleAir*, 884 F.3d at 1167 (adopting the *Acumed* standard for the comparison of claims).  The Federal Circuit has not provided guidance on the precise test to be used for determining when patent claims are "essentially the same." However, it has indicated that "claims which are patentably indistinct are essentially the same." *SimpleAir,* 884 F.3d at 1167.

Here, it is clear that Cisco has not met its burden to prove that the claims of the '516 Patent are essentially the same as those of any of the previously litigated claims, regardless of whether the Court agrees with Cisco that all claims of the '898, '327, and '511 Patents originally asserted in *Oyster I* are precluded.  It is a contested issue of fact whether the scope of the asserted claims of the '516 Patent are essentially the same as any other patent claims.  Once the Court has construed the claims, Cisco may present evidence to the jury—*e.g.*, evidence that the claims are patentably indistinct from others—to prove its assertion that the claims are essentially the same as other claims previously litigated.

Having determined that Cisco failed to establish that the same claim or cause of action at issue here was adjudicated in a prior suit, the Court need not reach any of Cisco's remaining

---

previously litigated claims.  *Senju*, 746 F.3d at 1353 ("We hold that, in the absence of a clear showing that such a material difference in fact exists in a disputed patentable reexamination claim, it can be assumed that the reexamined claims will be a subset of the original claims and that no new cause of action will be created.").  No such presumption exists in this case.

arguments related to the '516 Patent.  For the reasons stated above, the Court finds that Cisco has not proven that *res judicata* bars any claims of the '516 Patent.

### B.  Cisco Has Not Proven that *Res Judicata* Bars the Claims of the '898 Patent

Cisco argues that *res judicata* bars the asserted claims of the '898 Patent because the agreed stipulation in *Oyster II* dismissing all claims with prejudice acts as a final judgment on the merits of those claims.  (Dkt. No. 37 at 13.)  However, it is undisputed that the asserted claims of the '898 Patent were not at issue in *Oyster II* when that case was dismissed with prejudice.  (Dkt. No. 48 at 4; Dkt. No. 47 at 7-8.)  Cisco does not contest that those claims were dropped in order to narrow the *Oyster I* case.

As this Court has stated, "[a] patentee's voluntary withdraw[al] of previously asserted patent claims" for the purpose of narrowing a case is treated as a dismissal without prejudice. *Realtime Data LLC v. EchoStar Corporation*, C.A. No. 6:17-CV-00084-JDL, 2018 WL 6267332, at *3 (E.D. Tex. Nov. 29, 2018) (citing *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012)).  It is well established that a dismissal without prejudice should not preclude re-litigation of the dismissed claims in the same court.  *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim.").  Indeed, many Circuits have applied this principle specifically to *res judicata* arguments.  *Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003) ("A dismissal without prejudice is not an adjudication on the merits and thus does not have a *res judicata* effect."); *Santana v. City of Tulsa*, 359 F.3d 1241, 1246 n.3 (10th Cir. 2004) ("Generally, a dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits, and thus does not have res judicata effect." (quotation marks, citation, and brackets omitted)); *In re Hallahan*, 936 F.2d 1496,

1499 n.2 (7th Cir. 1991) ("The case was dismissed without prejudice, and such a dismissal has no *res judicata* effect."); *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 821 (2d Cir. 1967) ("[A] dismissal without prejudice permits a new action (assuming the statute of limitations has not run) without regard to res judicata principles[.]").

Here, Cisco attempts to shortcut the "careful inquiry" required before applying claim preclusion by contending that the Federal Circuit in *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014), held that a final judgment has preclusive effect on all claims previously at issue in a case, even those that were earlier dismissed without prejudice. (Dkt. No. 37 at 14–15.) The Court rejects Cisco's argument. In *Brain Life*, the plaintiff attempted to re-litigate the method claims of a patent where those claims had been dropped from an earlier case, but the corresponding system claims *of the same patent* had been found non-infringing by a jury. 746 F.3d at 1050, 1053. In its discussion of claim preclusion, the Court noted that "claim preclusion bars both claims that were brought as well as those that could have been brought" and "a party may not split a cause of action into separate grounds in successive lawsuits." *Id*. at 1053. Applying these "principles" to the unique fact of the case, the Court concluded that the claims at issue were barred "[w]ithout a doubt." *Id*. The Court further stated that "the possibility that acts of infringement of the method claims could be subject to a future cause of action" was foreclosed by "the final MIDCO judgment once that judgment was entered." *Id*. We do not read this conclusion as a broad rule that all claims dismissed without prejudice—irrespective of their similarity or relationship to other, fully-litigated claims—are barred by *res judicata* when a final judgment is later rendered in the same case. As a result, Cisco's argument that *Brain Life* requires that *res judicata* apply to the asserted claims of the '898 Patent without any further analysis is unavailing.[2]

---

[2] The other authorities cited by Cisco are inapposite. *Nuance Commc'ns., Inc. v. ABBYY USA v. Software House, Inc.* involved due process objections where the court had specifically stated that the final judgment after trial applied to

Lastly, Cisco contends that *res judicata* should apply because the claims of the '898 Patent are "highly duplicative" and "essentially the same claim scope" as those the adjudicated claims of the '327 Patent.  (Dkt. No. 48 at 5.)  However, Cisco failed to raise these arguments before its reply brief and has not even attempted to perform a factual comparison of the claims of the '898 Patent with those of the '327 Patent.  Even if Cisco had performed such an analysis, however, these arguments fail for the same reasons described above with regard to the '516 Patent.  As with the '516 Patent, the Court notes that Cisco is free to present evidence to the jury that the claims of the '898 Patent are "essentially the same" as the claims adjudicated claims in *Oyster I* and *Oyster II*.

Having determined that Cisco failed to establish that there has been a final judgment on the merits of any claim in this case, the Court need not reach any of Cisco's remaining arguments related to the '898 Patent.  For the reasons stated above, the Court finds that Cisco has not proven that *res judicata* bars any claims of the '898 Patent.

### C.  Cisco Has Not Proven that the *Kessler* Doctrine Applies in this Case

The parties agree that application of the *Kessler* Doctrine rises and falls with the Court's determination on claim preclusion.  (Dkt. No. 37 at 19, 24; Dkt. No. 47 at 24.)  Cisco failed to prove that *res judicata* applies to any of the claims in this case and has likewise failed to prove that the *Kessler* doctrine applies.

---

the non-tried patents, and the plaintiff had not objected.  813 F.3d 1368, 1374 (Fed. Cir. 2016).  Similarly, *In re Katz Interactive Call Processing Patent Litig.* involved due process concerns where the District Court required the plaintiff to "make a showing that any of the unselected claims raised issues of infringement or invalidity that were not duplicative of the issues raised by the selected claims."  639 F.3d 1303, 1311 (Fed. Cir. 2011).  Neither case stands for the broad rule Cisco advocates here.

## IV.     CONCLUSION

Based on the foregoing, the Court is of the opinion that the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint as to Infringement of U.S. 8,913,898 and U.S. 10,205,516 should be and hereby is **DENIED.**

**So ORDERED and SIGNED this 16th day of April, 2021.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE