IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| OYSTER OPTICS, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | Case No. 2:10-CV-00211-JRG |
| CISCO SYSTEMS, INC., | § § | |
| *Defendant.* | § § § | |

**PLAINTIFF OYSTER OPTICS, LLC'S OBJECTIONS TO
CLAIM CONSTRUCTION MEMORANDUM AND ORDER**

Oyster Optics, LLC respectfully objects pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(a) to the Claim Construction Memorandum and Order of the United States Magistrate Judge, Dkt. 73 (the "Order"). Specifically, Oyster objects to the Magistrate Judge's construction of the term "mode" in U.S. Patent No. 6,665,500. The Court can modify or set aside any part of the Order that is "clearly erroneous or is contrary to law." 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a).

The Magistrate Judge adopted a construction for the term "mode" as "manner of operation during which at least one specific data signal is either amplitude modulated or phase modulated, but not both simultaneously." (Dkt. 73 at 27.) Oyster respectfully asks that the Court set aside this portion of the Order and instead determine that no construction of the term "mode" is required because the term in the claims bears its plain and ordinary meaning.

The Order expressly rejected Cisco's proposed constructions for "phase modulating" and "amplitude modulating" that would have required that "the phase modulating does not include amplitude modulating" and that "the amplitude modulating does not include phase modulating." (Dkt. 73 at 8–9, 27.) This accords with the Magistrate Judge's prior claim construction of "phase modulate" in the '500 patent as not excluding use of amplitude modulation in phase-modulation mode. *Oyster Optics, LLC v. Infinera Corp.*, No. 2:19-cv-00257, 2020 WL 4260957, at *8 (E.D. Tex. July 23, 2020). It also accords with the Court's finding that Cisco and other defendants had failed to show the terms "phase modulation" and "amplitude modulation" are mutually exclusive, in general. *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-CV-1302-JRG, 2017 WL 6026729, at *8 (E.D. Tex. Dec. 5, 2017), opinion clarified, No. 2:16-CV-1302-JRG, 2018 WL 3067727 (E.D. Tex. June 21, 2018) ("As a general matter, Defendants have not shown that phase modulation and amplitude modulation are necessarily mutually exclusive. In other words, Defendants have not shown that using phase modulation necessarily precludes using amplitude modulation.") It is also a result compelled by claim 19 of the '500 patent, which expressly requires that "***during the second alternate transmission mode the light is both amplitude-modulated and phase-modulated***" (emphasis added).

1

The Order's construction of "mode," however, suggests that amplitude modulation and phase modulation are mutually exclusive, at least as they pertain to a given "data signal." This construction improperly excludes preferred embodiments from the scope of the claims. As the Magistrate Judge found in *Infinera*, the specification describes "mixed" signals which involve simultaneous amplitude- and phase-modulation. *Oyster Optics, LLC v. Infinera Corp.*, No. 2:19-cv-00257, 2020 WL 4260957, at *5 (E.D. Tex. July 23, 2020) ("But the specification undercuts this argument by disclosing a 'specialized receiver,' which 'can read a *mixed* optical signal of both phase-modulated and direct and delayed amplitude-modulated signals . . . .' '500 Patent at 3:62–64 (emphasis added). The patent differentiates the 'mixed' signal from a simple switching between signal types. *See id.* at 4:36–43 (referring to simultaneous amplitude- and phase-modulation as 'a mixture of phase and amplitude modulation').") The order in *Infinera* further rejected the argument that the specification of the '500 patent taught against phase- and amplitude-modulating the same data stream. *Id.* ("Yet there is no support for this in the description, and the passage could just as easily refer to a data stream. Moreover, ***even if the same data stream was both phase- and amplitude-modulated***, Defendants do not show that the phase-modulated optical signal would not be any less secure." (emphasis added).)

The Order bases its construction of "mode" that excludes certain forms of simultaneous phase and amplitude modulation on a response to an Office Action during prosecution of the '500 patent. (Dkt. No. 62-6 at 113–116.) In that response, the patentee amended the claims to require, in relevant part, "the first mode and the second mode occurring at different times." (Dkt. 73 at 22–23.) The patentee also made certain statements distinguishing a prior art reference called "Djupsjöbacka." (*Id.*) The Order quotes from three statements distinguishing "Djupsjöbacka": (1) "Djupsjobacka discloses . . . the same signal being sent in AM and PM mode at the same time," (2) "Djupsjobacka . . . transmits AM and PM signals at exactly the same time, and not in two different time modes, as now claimed," and (3) "Djupsjobacka shows simultaneous AM/PM transmission." (*Id.*)

2

There two natural ways to read these statements distinguishing Djupsjöbacka: (1) as distinguishing art that used simultaneous amplitude modulation and phase modulation and (2) as distinguishing art that lacked two modes occurring at distinct times. Neither party advocated the first reading. Indeed, Cisco's brief was explicit that "[t]he dispute here does not center on whether any use of phase modulation during a 'mode' excludes any use of amplitude modulation (or vice-versa) during that mode." (Dkt. 62 at 6.) Neither party disputed that "mode" must be construed to be consistent with claim 19 and with simultaneous modulation of the "light" with amplitude modulation and phase modulation. ('500 patent at 10:17–22, 10:26–28.) And the Order explained that its construction permitted simultaneous amplitude- and phase-modulation of "the light." (Dkt. 73 at 18 ("under Defendant's proposal 'phase-modulated signals can co-exist with amplitude-modulated signals . . . for separate signals.'").)

The second reading is the one that actually matches the claim amendments. The language added in the amendments was directed to whether the modes occurred at the same or different times. (Dkt. 73 at 22–23; Dkt. 62-6 at 119–121.) None of the language added to the claims addresses what the modes are or what the forms of modulation used in those modes are. Where statements in the prosecution history have a reasonable interpretation that is directed to a distinction in the plain language of the claims, any disclaimer should be limited to that interpretation, and not based on interpretations based on distinctions that do not appear in the claims. *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1373 (Fed. Cir. 2007) ("For a prosecution statement to prevail over the plain language of the claim, the statement must be clear and unmistakable . . . .")

The Order rejected this second reading and instead found a third reading for these statements, namely that "in the above-reproduced prosecution history the patentee focused on the simultaneous use of phase modulation and amplitude modulation for a particular signal in Djupsjöbacka." (Dkt. 73 at 25.) In other words, the Order found that the statements in prosecution permitted simultaneously transmitting different signals using amplitude modulation and phase

modulation, but excluded "modulating a *single data stream* using both amplitude modulation and phase modulation *at the same time*." (Dkt. 73 at 25 (emphasis in original).)

This is not a natural reading of the statements in the prosecution history, and it certainly does not follow from those statements as a "clear and unmistakable" disclaimer. *Elbex*, 508 F.3d at 1373. The second and third statements say nothing about the "same signal" or "single data stream," and to the extent that they disparage simultaneous amplitude- and phase-modulation per se, they disparage it in all forms, whether a single data stream is being modulated or multiple data streams. However, reading these statements as disclaiming all forms of simultaneous amplitude- and phase-modulation would render claim 19 (requiring a mode where "the light is both amplitude-modulated and phase-modulated") inoperative and render claim 18 (requiring "wherein during the first transmission mode the light is not amplitude-modulated") redundant, in violation of the doctrine of claim differentiation.

The approach advocated by Cisco, and largely adopted by the Order, is to read these statements from the prosecution so as to produce the largest possible disclaimer that does not run afoul of the limitations of claim 19 or claim differentiation of claim 18. (*See* Dkt. 73 at 18.) As the Federal Circuit held in the *Tech. Props.* case cited in the Order:

> [T]he scope of surrender is not limited to what is absolutely necessary to avoid a prior art reference; patentees may surrender more than necessary. When this happens, we hold patentees to the actual arguments made, not the arguments that could have been made. The question is what a person of ordinary skill would understand the patentee to have disclaimed during prosecution, not what a person of ordinary skill would think the patentee needed to disclaim during prosecution.

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017) (citations omitted). Respectfully, the construction in the Order turns this doctrine on its head, broadening the surrender to have the broadest possible scope consistent with the claims, rather than limiting the surrender to the distinction with Djupsjöbacka that was actually being drawn to obtain allowance of the claims, as reflected by the limitations actually added to the claims to overcome

Djupsjöbacka. This approach also completely ignores the requirement that disclaimers be "clear and unmistakable." *Elbex*, 508 F.3d at 1373.

     For the reasons set forth above, as well as in Oyster's prior briefing on this term (Dkt. 61 at 8–11; Dkt. 63 at 1–6) and at the hearing (Dkt. 71), the construction of "mode" in the Order rests on an erroneous interpretation of the prosecution history and misapplies the law of claim construction. Oyster respectfully asks that the Court set aside this portion of the Order and instead determine that no construction of the term "mode" is required because the term in the claims bears its plain and ordinary meaning.

Dated: May 18, 2021

Respectfully submitted,

By: */s/ Reza Mirzaie*
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
Neil Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile 310/826-6991

*Attorneys for Plaintiff*
*Oyster Optics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on May 18, 2021 with a copy of this document via the Court's ECF system.

DATED: May 18, 2021                                Respectfully submitted,

                                                   By: /s/ Reza Mirzaie
                                                       Reza Mirzaie

6